## Ira Eaton v. Charles Winnie.

*Action on the case: Injuries to property communicated by infection.* A party, who being allowed to remain on land, under a mere license, so uses it as to make it the means of communicating an infectious disease, will be held liable in damages, for all the injury thus occasioned to the property of the owner or licensor of the premises: such owner being ignorant of the danger to which his property was exposed.

*Deceit as affecting the question of negligence.* Where one assumes to have knowledge of a subject of which another may be ignorant. and knowingly makes false statements regarding it, upon which the other relies to his injury, the party who makes such statements will not be heard to say that the person who took his word and relied upon it, was guilty of such negligence, as to be precluded from recovering compensation for injuries which were inflicted on him under cover of the falsehood.

*Heard April 6. Decided April 12.*

Error to Jackson Circuit.

Action on the case. Eaton, the defendant below, being in the occupancy of premises belonging to Winnie, under circumstances which show his occupancy to be that of a licensee, merely, used the premises to pasture upon them a flock of sheep affected with an infectious disease; which, by means of this use of the premises, was communicated to the sheep of Winnie, who moved in immediately after the sheep of Eaton had been taken away. For the damages, suffered by Winnie, resulting from the infection thus communicated to his sheep, he brings this action against Eaton. Evidence was offered on the trial to show that Eaton knew of the disease and the danger of and mode of communica-

ting infection from it; and that Winnie was ignorant in these respects.

The questions to be reviewed in this Court were raised in the Court below upon the admissibility of evidence, and also by exceptions to the charge of the Court.

The defendant requested the Circuit Judge to charge the jury:

1. That the plaintiff cannot recover on the third count, for the reason that the acts alleged as willful or negligent were lawful acts on the part of the defendant.

2. That the defendant had the right to put on the premises sheep that had the disease known as the scab.

3. That if the sheep of the plaintiff took the scab by reason of the infection remaining after the occupation by defendant, this would not make the defendant liable.

5. That plaintiff had no right to rely on the statement of Eaton that a frost would kill the scab, but knowing the facts himself, was himself bound to care for his own sheep and see that they were not infected.

6. That said statement of Eaton furnishes no excuse to the plaintiff for not seeing that his sheep were cared for and the disease prevented.

7. That Winnie, knowing that the farm had been occupied by sheep having had the scab, it was his duty to take means to prevent his sheep from taking the disease, and any statement made by Eaton furnishes no excuse.

8. That if Winnie took no means to prevent the disease, he was himself guilty of negligence.

The Circuit Judge refused to charge as firstly, secondly and thirdly as above requested; and also refused to charge as fifthly, sixthly, seventhly and eighthly above requested; but did charge the jury in reference thereto, that if the defendant negligently and knowingly put diseased sheep on the premises, knowing that the disease was contagious, and that the plaintiff's sheep would thereby be injured, he would be liable if plaintiff's sheep were thereby infected; that if

the plaintiff was guilty of negligence in trusting to what Eaton said about the disease being cured by the frost, or if he was negligent in putting his sheep on the place after he had knowledge of defendant's sheep being diseased, then the defendant would not be liable on that count; that if the complainant was himself negligent, or lacked due care in placing the sheep on the place, or in other words, if the plaintiff through negligence contributed to the injury he cannot recover.

The defendant excepted to the charges, and the aforesaid refusals. The jury, rendered a verdict for the plaintiff; and the judgment entered thereon comes into this Court by writ of error.

*John D. Conely,* for plaintiff in error.

*W. K. Gibson,* for defendant in error.

This action of trespass on the case arises from injuries to orchard and sheep of defendant, caused by the negligence and willful carelessness of plaintiff in error; and the questions of law submitted to this Court all relate to the last count in the declaration, and the admissibility of the evidence to maintain the same.

It is insisted by plaintiff in error, that he had a right to bring sheep, whether diseased or not, upon the premises sold to Winnie. Also, that whether such right existed or not, the injury to the sheep is too remote to furnish ground for damages.

Negligence is a violation of the obligation which requires care and caution in what we do.—*4 Comst., 349; 16 Ind., 312; Sherman and Redfield on Negligence, 5.*—The question of negligence depends on the facts in the particular case, and is not an abstract question of law.—*30 How. Prac., 219; 4 Barb., 193; Sherman and Redfield on Negligence, 8, 19.*—The injuries charged in the third count were the proximate and not the remote consequences of the willful,

careless and negligent acts of Eaton, and he should be held responsible for the damage.—*8 Pars. on Cont., 178 ; 3 Pars. on Cont., 179; 1 Hillard on Torts, 84,* § *11; 13 Wend. Rep., 518.*

Eaton had no right or permission to occupy the premises with his sheep. The diseased sheep were brought thereon by him after Winnie received his deed. Eaton knew the contagious character of the disease, and his conduct evinces a reckless disregard of consequences, which he might well have anticipated, in which case he will be held liable even for remote consequences.—*3d Ed. Sedgwick on Damages, 79, 88.*

There was no concurring negligence on the part of Winnie. The rule that a plaintiff in an action for negligence, must himself be free from negligence, requires only this, that he should have used such care as a man of ordinary prudence would employ under the circumstances.— *22 N. Y., 209 ; Sherman and Redfield on Negligence, 28.*

This is not a case of *damnum absque injuria.* The injury was not caused by the prudent and reasonable and lawful exercise of any right on the part of Eaton.

*D. Johnson,* on the same side.

The errors assigned on the rulings of the Court below, on the admissibility of evidence, are of no consequence, because the same questions are raised on exceptions to the charge of the Court in the submission of the case to the jury. The principal question in this case is, whether the facts set up in the third count of the declaration constitute a cause of action.

In the first request, the Court is asked to instruct the jury that the plaintiff below could not recover on the third count, for the reason that the acts alleged as willful or negligent were lawful. Second, That the defendant had the right to put on the premises sheep diseased with the " scab." Third, If the plaintiff's sheep became diseased, the defendant was not liable.

By refusal to charge as requested, the Court said to the jury, in substance, that the defendant could incur a liability to the plaintiff by putting diseased sheep upon his premises while in the temporary possession of them, provided he knew said disease to be infectious, and that plaintiff intended to bring sheep upon the premises, and that they would be likely to take on said disease. And this is the question for review.

Error is also assigned upon the refusal to charge that the plaintiff below had no right to rely on the statement of defendant that the frost would destroy the infectious properties of the disease, or as expressed in said request, "kill the scab," and was guilty of negligence in doing so. The Court refused to charge as requested, either in form or substance, but did charge what we claim to be the law of the case, viz: "That if the defendant negligently and knowingly put diseased sheep on the premises, knowing that the disease was contagious, and that the plaintiff's sheep would thereby be injured, he would be liable if the plaintiff's sheep were thereby infected." And he further charged them, in substance, that any neglect on the part of the plaintiff, either in believing what the defendant had told him, or in putting his sheep on the premises after the facts came to his knowledge, as disclosed in the case, then and in that case, the defendant was not liable. The rights of the defendant were fully protected by this charge, if the plaintiff had a right of action at all, under the third count of his declaration.

So, if we are right thus far, the only remaining question to be considered is, whether this is one of those injuries for which the law affords relief. The foundation of the defendant's liability rests on the fact, that he was not the owner of the premises, but temporarily in the possession of them. A man would have the right to convert his own house into a hospital for the treatment of patients affected with contagious diseases, if it were sufficiently removed from his neighbors, but we submit that a tenant, whose term was about to

expire, could not do so and leave the premises in a condition to imperil the lives of subsequent occupants. The liability to make reparation for any injury is said to rest "ON ORIGINAL MORAL DUTY" enjoined upon every person so to conduct himself or exercise his own rights as not to injure another. 1 Hilliard on Torts, 83.

It may be argued that there is no precedent for this action. This case, therefore, must be decided upon principle, and one of the leading principles in this class of actions is, that a man shall use his own property so as to do the least possible injury to his neighbor.

COOLEY, J.

Winnie brought a special action on the case, against Eaton, to recover damages consequent upon the manner in which Eaton had used premises which Winnie had bought of him. The third count of the declaration, which alone it is necessary for us to consider here, is as follows :

" AND WHEREAS, heretofore, to wit: on the 31st day of November, 1864, the said plaintiff was the owner in fee of the aforesaid described lands and premises, then lately purchased of said defendant, which said lands and premises were then and there, to wit: on the day and year last aforesaid, suitable and proper lands for farming and for the pasturing and raising and yarding of sheep, and were free from any contagion or infection dangerous, noxious or fatal to sheep or other stock, and being so, the owner in fee of said premises, the said plaintiff heretofore, to wit : on the day and year last aforesaid, at the township of Leoni, in said county of Jackson, at the special instance and request of said defendant, and in consideration that said defendant would exercise proper care and prudence in and about said premises, and not commit or suffer to be committed any damage or injury to said premises, or to the cattle, sheep or horses of said plaintiff, and would not bring or introduce upon said

premises any distemper or contagious or infectious disease dangerous to sheep or cattle, did allow, permit and suffer said defendant to occupy and remain in possession of said premises, and said defendant did occupy and remain possessed of said premises for a long space of time, to wit: from the 31st day of November, 1864, to the 10th day of January, 1865, whereby said defendant ought to have occupied said premises in a careful and prudent manner, and not committed himself, or suffer to be committed, any damage or injury to the same or to the cattle or sheep of said plaintiff on said premises, or introduced or permitted to be introduced, or brought upon said premises any sheep or other animals sick and diseased with any hurtful contagious disease or sickness, which might or could be communicated to the sheep of the said plaintiff.

Yet, the said defendant not regarding his duty, aforesaid, in the premises, afterwards, to wit: on the 1st day of December, 1864, and on divers and sundry other days and times between that day and the 10th day of January, 1865, negligently, carelessly and willfully contrived craftily to injure and defraud said plaintiff in this behalf, did turn in, and caused to be turned in and upon said premises and into the barnyard, sheepfold and enclosure of said plaintiff, wherein the sheep of said plaintiff were then and immediately about to be pastured and yarded, a large number, to wit: five hundred sheep, sick, diseased and affected with a noxious, dangerous and contagious disease, commonly known as the "scab," the said defendant then and there well knowing said sheep so turned in upon said premises to be so diseased and sick as aforesaid, by reason whereof, and by and through the carelessness and negligence and willfulness of said defendant, the said contagious disease was communicated to the sheep of said plaintiff, so that, to wit: four hundred of plaintiff's sheep, of great value, to-wit: of the value of five hundred dollars, became sick and disordered with said contagious disease, and great numbers, to

wit: two hundred, died thereby, and the rest, to wit: two hundred of the sheep of said plaintiff were rendered worthless to said plaintiff in consequence of said disease so communicated to them, so that said plaintiff wholly lost the use and benefit of and profit of said sheep, and was compelled to and did pay out divers large sums of money, to wit: one hundred dollars for medicine and nursing and care of said sheep, to the damage of said plaintiff of three thousand dollars, etc.

On the trial the plaintiff gave evidence to show that he purchased of Eaton the premises referred to in the declaration, by land contract on the 31st day of October, 1864; that he received the deed on the 29th day of November, 1864; that he went into possession of the premises on the fourth day of the following January; that previous thereto Whitfield Cain was in possession; that Cain moved off the day the plaintiff moved in; that plaintiff had been informed that Eaton formerly lived on the premises, but Cain was living there when plaintiff received his deed, and Eaton desired he might remain until Eaton fixed his house, to which plaintiff assented; that plaintiff brought sheep with him on the fourth day of January; that there had been sheep of Eaton's on the premises, which Eaton had been doctoring; that a day or two before he moved, he said to Eaton,—"Day after to-morrow I want to move," and asked Eaton if his, plaintiff's sheep, which were then sound, would not take the disease, and Eaton said, "No; one frosty night will remove it." The plaintiff gave further evidence tending to show the sheep Eaton had on the premises between the date of plaintiff's deed and the time he took possession in January, were afflicted with the disease called the "scab," and were doctored by Eaton for it; that plaintiff knew nothing of this disease, and believed what Eaton had told him; and that Eaton, to another person, assigned as a reason for putting the sheep on these premises, instead of elsewhere, the fear of communicating the disease to sheep he was going to get

for his daughter. The plaintiff gave further evidence tending to show that the scab was communicated to his sheep when turned upon. the premises, and they were greatly injured and diminished in value in consequence.

Upon this case the Court was asked to charge:

1. That the plaintiff could not recover, on said third count of his declaration for the reason that the acts alleged as willful or negligent were lawful acts on the part of defendant, and, if the plaintiff's sheep took the scab by reason of the infection remaining after the occupation by defendant, it would be *damnum absque injuria.*

2. That the plaintiff had no right to rely on the statement of Eaton, that a frost would kill the scab, but, knowing the fact himself, was bound to care for his own sheep and see that they were not infected.

These requests were refused, but the Court charged the jury that if the defendant negligently and knowingly put diseased sheep on the premises, knowing that the disease was contagious, and that the plaintiff's sheep would thereby be injured, he would be liable if plaintiff's were thereby infected; that, if the plaintiff was guilty of negligence in trusting to what Eaton said about the disease being cured by the frost, or if he was negligent in putting his sheep on the place after he had knowledge of defendant's sheep being diseased, then, the defendant would not be liable on that count; that if plaintiff was himself negligent, or lacked due care in placing the sheep on the premises, or if, in other words, the plaintiff, through negligence, contributed to the injury, he could not recover.

The jury having returned a verdict for the plaintiff, the correctness of this charge and of the refusals to charge, is the question which we are to consider.

Was the act of the defendant in putting the diseased sheep upon the premises, with knowledge of the disease and of the liability to communicate the infection in the manner charged a lawful act? We think not.

It is assumed in the argument made on behalf of Eaton in this Court, that after he had conveyed the land he became tenant to Winnie, and had the usual authority of a tenant to make use of the premises as he pleased. This, we think, is an error. Nothing in the case shows that he was given any such authority. The request he made on behalf of Cain was only that Cain might be allowed for a period to remain on the land until a house elsewhere was ready, and an affirmative response to this request gave all the right he or any one under him had there. The right to the possession of the premises passed immediately to Winnie on the receipt of the deed, and the permission for Cain to remain was a mere license, which even while unrevoked would not have precluded the licensor from taking actual possession of the premises generally, and putting his stock upon them if he saw fit. Any occupation by Eaton inconsistent with this general right in his grantee would not have been warranted by the license, and consequently would have been wrongful and unjustifiable. And the wrong becomes very palpable and very gross when under a mere permission for a family to remain on the land, the party assumes to bring infection upon it, of a character which must remain after full possession has been surrendered. It is very evident to us that the license given was exceeded, and the gratuitous privilege Eaton had solicited was grossly abused, and that he ought in justice to be held responsible for the consequent damages.

But even if this be so, it is claimed that the plaintiff below was not entitled to recover, because, having full knowledge of the facts he was himself guilty of negligence, in turning his sheep upon the premises where they would be likely to take the infection. We think, however, that this position is not sustainable. The plaintiff testified that he was ignorant of this disease, and we are not aware that the disease is so common and so generally understood, that every man at his peril is bound to understand its danger

and its infectious character. Eaton assured him there was no danger, and he believed this assurance. Where one assumes to have knowledge upon a subject of which another may well be ignorant, and knowingly makes false statements regarding it upon which the other relies, to his injury, we do not think it lies with him to say that the party who took his word and relied upon it as that of an honest and truthful man, was guilty of negligence in so doing, as to be precluded from recovering compensation for the injury which was inflicted upon him under cover of the falsehood. If a party's own wrongful act has brought another into peril, he is not at liberty to impute the consequences of his acts to a want of vigilance in the injured party, when his own conduct and untruthful assertions have deprived the other of that quality and produced a false sense of security. Upon this point we content ourselves with referring to the cases of *Pennsylvania R. R. Co. v. Ogier 35 Penn. St. 72 ; Gordon v. Grand St. R. R. Co. 40 Barb., 550 ;* and *Ernst v. Hudson River R. R. Co., 35 N. Y. 28,* which fully support and illustrate the position here taken.

The judgment of the Court below, we think, should be affirmed with costs.

The other Justices concurred.