SWEET *v.* MARTIN.

VENDOR AND PURCHASER—RESCISSION—FRAUD—LACHES—WAIVER.
  Where, in a suit by the vendees for the rescission of a
  contract for the purchase of land on the ground of fraudu-
  lent representations, it appears that any delay in bringing
  suit after the fraud was discovered was induced by the
  vendors' persuasion and insistence that further trial would
  demonstrate the truth of their representations, they are
  in no position to complain of the delay and claim that
  plaintiffs have waived their right to complain of the fraud.[1]

Cross-appeals from Emmet; Shepherd (Frank), J.
Submitted January 15, 1926.     (Docket No. 124.)
Decided March 20, 1926.

Bill by Minor A. Sweet and another against George
B. Martin and another for the rescission of a land
contract on the ground of fraud.    Defendants filed
a cross-bill for foreclosure of the contract.    From a
decree for plaintiffs, all parties appeal.  Affirmed.

*Fritz L. Radford* and *George B. Murphy,* for plain-
tiffs.

*C. J. Pailthorp (Race, Haass & Allen,* of counsel),
for defendants.

McDONALD, J.    On May 22, 1922, the plaintiffs
purchased of the defendants on contract certain
northern Michigan resort property.    The considera-
tion was $11,000.    The plaintiffs made a down pay-
ment of $2,000, and were to pay the balance in annual
payments of $1,000 each.    To secure the second an-
nual payment they gave the defendants a mortgage
on some Detroit real estate.    This bill, which is filed

[1]Vendor and Purchaser, 39 Cyc. p. 1428.
  Right to rely upon representations made to effect contract as
a basis for a charge of fraud, see note in 37 L. R. A. 593.

on the theory that the contract was procured by fraudulent representations, prays for a rescission of the contract, a cancellation of the mortgage and a return of the payments made. The defendants answering denied all allegations of fraud and in a cross-bill asked as affirmative relief for the foreclosure of the contract. On the hearing a decree for the plaintiffs was entered. Both parties appeal.

The plaintiffs base their right to a rescission of the contract upon the following alleged fraudulent representations:

"*First:* That there was a paying business already established on said premises of renting cottages, selling home-made jam, maple syrup and other products, which business brought in an annual profit of $1,500 or more; that during the resort season there were 200 or 300 people a day who visited said resort, and that these people furnished the market for said products or anything in that line that was for sale there; that said resort was a wonderful place to operate a tea room because the Old Trail Tavern which was located near said resort had a wonderful business and turned away, during the resort season, as high as 75 to 100 people a day that they were unable to feed, and that the person who ran the tea room for said defendant George B. Martin had done fine and would have made much more money if she had had facilities to take care of all her guests, but that she had to turn many away; that the two smaller birch log cottages would easily rent for $250 a season and the large one for $300 a season, and that the plaintiffs could rent a dozen such cottages there if they had them.

"*Second:* That the cottages were well built of good material."

In regard to the first allegations of fraud we think it is fairly established by the testimony that defendants made the representations claimed, and that they were not true. Mr. Sweet was a stenographer of the recorder's court in the city of Detroit. Neither he nor his wife had any experience in handling resort

property.    They had no considerable means, and evidently depended upon the profits of what defendants had represented as an established business to assist them in making their annual payments on the contract.    In addition to this property the defendant Martin had owned and operated other resort property in the same locality.    He had lived there for many years.    His opinion as to the probable profits of the business undoubtedly influenced the plaintiffs, but he cannot be held responsible for that.    He is responsible, however, for representations as to conditions upon which the plaintiffs based their estimate of the future profits.    That he made such representations, and also misrepresented the amount of business he had done, we have no doubt.    The circuit judge, who had the advantage of seeing and hearing the witnesses, in the opinion filed as a basis of his decree, says:

"The court is of the opinion that Martin considerably exaggerated the earnings of the plant during the time he operated it, which would afford the Sweets legal ground for rescinding the contract if they moved to do so in time."

In this finding, the circuit judge has suggested the only question which requires discussion. · Are the plaintiffs estopped from enforcing their right to rescind this contract by reason of their laches?    The plaintiffs purchased the property in May, 1922.    They filed this bill in May, 1924.    They learned of the fraud, or came to believe, after the first season's operation of the business in 1922, that the representations made by the defendants were not true.    With this knowledge, in the spring of 1923, they made their annual payment on the contract, and continued to conduct the business for that season.    For these acts, inconsistent with an intention to rescind, and the delay in starting suit, the plaintiffs offer the excuse that in 1922, when they learned of the falsity of the repre-

sentations, Mr. Sweet promptly complained to Mr. Martin; that Martin renewed the representations and urgently insisted that the season of 1922 was not a normal season in that locality for the resort business, which was true; and that he felt sure that a trial of the business during the next season would demonstrate the truth of his representations; that upon Martin's insistence they consented to give the business a further trial; that they had no better success the following season, and were then fully convinced that they had been defrauded; that they told Mr. Martin at that time that they would not carry out the contract; that at his instance negotiations for a settlement were pending for some time thereafter, on the failure of which this suit was begun.     If this claim is established by the testimony, and we believe it has been, it affords a reasonable excuse for the plaintiffs' delay in asserting their right to rescind the contract after discovering the fraud.     The defendants are in no position to complain of a delay that was occasioned by their own persuasion and insistence.     Under the circumstances as shown by the testimony, we think the plaintiffs have not waived their right to complain of the fraud.

It is unnecessary to discuss the second allegation of fraud.     It is not established by the testimony that the defendants made the representations claimed.

The plaintiffs have also appealed.     Their claim of appeal is based on a dissatisfaction with the amount allowed them on the rescission of the contract.     In this respect we think that the circuit judge made an equitable disposition of the case.     It requires no discussion.

The decree is affirmed, with costs to the plaintiffs.

BIRD, C. J., and SHARPE, SNOW, STEERE, FELLOWS, WIEST, and CLARK, JJ., concurred.