COLE LAKES, INC v LINDER

Docket No. 78-2774. Submitted May 8, 1980, at Lansing.—Decided August 25, 1980.

In 1967, James Cole purchased by land contract 3,000 acres in Alcona County. Through this land flowed a stream known as Comstock Creek. Cole's intent was to dam Comstock Creek creating a lake. He planned to develop the remaining land into residential lots. To carry out this project he formed a corporation, in which he was the sole shareholder, known as Cole Lakes, Inc. Norman McIntyre, a contractor, worked with Cole and started the actual construction on this project. Orville Meier, a developer, worked with Cole before and invested money in this project. Cole assigned his land contract to Cole Lakes. In early 1970, Cole found that he could not do the project for lack of capital and conveyed his stock to McIntyre and Meier in exchange for the release of his indebtedness to them. In May, 1970, the land contract was foreclosed, but an extension was negotiated to allow for redemption until September 5, 1970. In early summer of 1970, Max Linder, a real estate salesman, learned of the property and obtained permission to try to sell it. About a week before September 5, 1970, Linder interested Robert Benton in the project. Benton recruited Robert Beltz, and Linder, Benton and Beltz raised $100,000. On September 4 and 5, 1970, Linder, Benton and Beltz met with Meier and McIntyre to purchase the latter's redemption rights in the land contract. Also present at that meeting were Bill Cottrill and Carl Brownell. Cottrill and Brownell had the experience of developing a similar project known as Lakewood Shores in Oscoda and were advising Benton and Beltz. Attorney

REFERENCES FOR POINTS IN HEADNOTES
[1] 37 Am Jur 2d, Fraud and Deceit § 12.
[2] 5 Am Jur 2d, Appeal and Error § 839.
[3] 5 Am Jur 2d, Appeal and Error § 841.
[4, 5] 37 Am Jur 2d, Fraud and Deceit § 158.
[5] 37 Am Jur 2d, Fraud and Deceit § 247. et seq.
[6] 37 Am Jur 2d, Fraud and Deceit § 417.
[7] 37 Am Jur 2d, Fraud and Deceit § 338.
[8] 27 Am Jur 2d, Equity § 138.

James Cook of Harrisville was present, representing McIntyre and Meier, and actually drafted the documents. On September 5, the project was sold to Benton, Beltz and Linder, who paid over $100,000, and the contract was redeemed. About a week after September 5, 1970, Brownell and Cottrill bought the interest of Benton, Beltz and Linder in the contract. There were further negotiations resulting in Brownell and Cottrill, doing business as a partnership known as Conel Enterprises, being assigned the interest of Benton, Beltz and Linder in the September 5th contract. Cottrill and Brownell were unable to make the project go and forfeited the land contract in May, 1976, after investing between $400,000 and $500,000 in it and unsuccessfully trying to resell it. At the time that the land was forfeited, there was a balance due on the contract of September 5th to Cole Lakes. In July, 1976, when Cole Lakes and the others who had paid money to Cole Lakes for options to purchase lots once the lands were developed and platted and who released their claims in return for an assignment of a share of the lawsuit, filed a complaint against Linder, Beltz, Benton, Brownell and Cottrill in the Genesee Circuit Court, Phillip C. Elliott, J. The trial resulted in a judgment for the defendants. Defendants claimed that, at the meeting of September 4 and 5, 1970, Meier and McIntyre made material representations of fact which were false, including the following: (1) that a valid dam permit from the DNR had been obtained which would allow the holder to build an artificial lake with 18 to 20 miles of shoreline at an elevation of 872.5 feet above sea level; (2) only one dam was necessary, which would cost $50,000 to construct; (3) a necessary bay excavation called "Garvey's Bay" could be accomplished at a cost of $10,000 to $14,000; and (4) water impounded by the dam would naturally reach Garvey's Bay; and that such representations were false since they had been involved in the project for three years and were familiar with the land and engineering for the project, McIntyre participated in lake level hearings in circuit court and both parties knew from a prior attempt to sell the project that additional dams and dikes would be required. The trial judge found that Meier and McIntyre were "the agents of Cole Lakes, desperate to salvage their investment which would be lost in 24 hours if they did not sell the project, [who] deliberately misled the defendants about the true cost of the lake in order to sell the project. In these circumstances, [I am] satisfied that McIntyre and Meier, on behalf of plaintiffs, made material misrepresentations, which were false, and known to be false, in order to induce the defendants to buy this land. Defendants Benton,

Beltz and Linder did buy the land and they would not have done so if the false representations had not been made. Defendants Cottrill and Brownell also heard the false representations and relied on them when they agreed to buy out and take over the obligations of the original purchaser. All defendants suffered some financial injury as a result." Plaintiffs appeal. *Held:*

1. The general rule is that to constitute actionable fraud it must appear that: (1) the defendant made a material representation; (2) it was false; (3) when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) he made it with the intention that it should be acted upon by the plaintiff; (5) the plaintiff acted in reliance upon it; and (6) he thereby suffered injury. The testimony was equivocal and credibility was an important factor for the factfinder. Appellate courts, in reviewing controverted issues of fact in a nonjury law case, do not consider the case *de novo* and will reverse the judgment of the trial court only where the judgment is against the clear preponderance of the evidence. In this case there was no error.

2. Representations concerning drainage, topography and features concerning land can be actionable if false. The misrepresentations were made by people having superior knowledge and concerned matters which would not have been revealed through visual examination of the property. The trial court's decision was not erroneous.

3. One seeking to defend on the grounds of fraud must rescind promptly. The issue of promptness is a question of fact, and the court's conclusion is not against the clear preponderance of the evidence.

4. Plaintiffs are barred from recovering on the theory of unjust enrichment because of the fraudulent inducement of their agents and predecessors.

Affirmed.

1. FRAUD — ELEMENTS OF ACTION.

The general rule is that to constitute actionable fraud it must appear that: (1) the defendant made a material representation; (2) it was false; (3) when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) he made it with the intention that it should be acted upon by the plaintiff; (5) the plaintiff acted in reliance upon it; and (6) he thereby suffered injury.

2. APPEAL — NONJURY CASES — ISSUES OF FACT — REVIEW.

Appellate courts, in reviewing controverted issues of fact in a

nonjury law case, do not consider the case *de novo* as if it were in equity.

3. Appeal — Nonjury Cases — Evidence.
Appellate courts do not reverse the judgment of the trial court in a nonjury case unless the judgment is against the clear preponderance of the evidence.

4. Fraud — Real Property — Misrepresentations — Drainage.
Misrepresentations concerning drainage, topography, and features concerning land may be actionable.

5. Fraud — Due Diligence.
A defrauded party owes to the party who defrauded him no duty to use diligence to discover the fraud.

6. Fraud — Contracts — Recission — Timeliness of Recission — Question of Fact.
A party defending a contract action on the grounds of fraud must have rescinded promptly; whether or not a recission was within a reasonable time is a question of fact for the trier of fact.

7. Fraud — Defenses — Contracts — Recission — Status Quo.
Fraud is a defense in either a legal or equitable proceeding; one seeking to rescind a contract on the ground of fraud must restore the other party to the status quo insofar as it is possible to do so.

8. Equity — Clean Hands.
One seeking the aid of equity must come with clean hands; one who claims rights acquired by fraud will not prevail.

*Brown & Winckler,* for plaintiffs.

*Currie, Kendall, Keith, Larkin, Pommerville & Merrill, P.C.,* for defendants, Brownell and Cottrill.

*Richard J. Behm,* for defendants Benton, Beltz and Linder.

Before: Cynar, P.J., and M. J. Kelly and T. Gillespie,* JJ.

T. Gillespie, J. In 1967 a land speculator by the

* Circuit judge, sitting on the Court of Appeals by assignment.

name of James Cole purchased by land contract 3,000 wooded acres in Alcona County. Through this land there flowed a stream known as Comstock Creek. Cole's intent was to dam Comstock Creek creating a lake which he would name Lake Kewanee. He then planned to develop the remaining land into residential lots. To carry out this project he formed a corporation in which he was the sole shareholder, known as Cole Lakes, Inc., hereafter referred to as Cole Lakes. Norman McIntyre was a contractor who had worked with Cole and who started the actual construction on this project. Orville Meier was a developer who had worked with Cole before and invested money in this project. Cole assigned his land contract to Cole Lakes. He found in early 1970 that he could not do the project for lack of capital and conveyed his stock to McIntyre and Meier in exchange for the release of his indebtedness to them.

In May, 1970, the land contract was foreclosed, but an extension was negotiated to allow for redemption until September 5, 1970. Meier and McIntyre unsuccessfully attempted to sell the project to two development corporations. In early summer of that year a Flint real estate salesman by the name of Max Linder learned of the property and obtained permission to try to sell it.

About a week before September 5, 1970, Linder interested Robert Benton, a Flint attorney, in the project. Benton recruited his law partner, Robert Beltz, and Linder, Benton and Beltz raised $100,-000.

Much of the case centers about a meeting in Alcona County on September 4th and 5th, 1970, at which time Linder, Benton and Beltz met with Meier and McIntyre to purchase the latter's redemption rights in the land contract. Also present

at that meeting were Bill Cottrill, a real estate land developer formerly from Flint, and Carl Brownell, another Flint attorney. Cottrill and Brownell had the experience of developing a similar project known as Lakewood Shores in Oscoda and were advising Benton and Beltz.

Attorney James Cook of Harrisville was present representing McIntyre and Meier and actually drafted the documents.

On September 5th, the project was sold to Benton, Beltz and Linder, who paid over $100,000, and the contract was redeemed.

Brownell and Cottrill, by virtue of being present at the negotiations, became interested in the property. About a week after September 5, 1970, Brownell and Cottrill bought Benton, Beltz and Linder's interest in the contract. There were further negotiations between the Flint group and McIntyre and Meier resulting in Brownell and Cottrill, doing business as a partnership known as Conel Enterprises, being assigned the interest of Benton, Beltz and Linder in the September 5th contract.

Cottrill and Brownell tried for three or four years to make the project go but were unable to do so and forfeited the land contract in May, 1976, after investing between $400,000 and $500,000 in it and unsuccessfully trying to resell it. At the time that the land was forfeited there was a balance due on the contract of September 5th to Cole Lakes.

Nothing in particular occurred until July, 1976, when Cole Lakes and the balance of the plaintiffs, who were persons who had paid money to Cole Lakes for options to purchase lots once the lands were developed and platted and who released their claims in return for an assignment of a share of

the lawsuit, filed a complaint against Linder, Beltz, Benton, Brownell and Cottrill.

The trial in April, 1978, before Judge Phillip C. Elliott in Genesee County resulted in a judgment for the defendants.

The plaintiffs appeal and the following claims were raised.

*The trial court erred in finding that a novation had occurred whereby the parties mutually agreed to the substitution of defendants Brownell and Cottrill for defendants Linder, Benton and Beltz as obligors under a contract.*

This issue was decided favorably for defendants Linder, Benton and Beltz by the trial court in a bifurcated trial. As it turned out later in the trial, this issue became moot when the court found fraud. We do not find error in the decision of the trial court in its determination that there was fraud in the inducement and it therefore is unnecessary for this court to comment on this claim.

*The trial court erred in concluding that defendants were fraudulently induced to purchase property by material misrepresentations of fact made by plaintiff's agents.*

Defendants claim Meier and McIntyre made material representations of fact at the meeting of September 4th and 5th, 1970, which were false, including the following: (1) that a valid dam permit from the DNR had been obtained which would allow the holder to build an artificial lake with 18 to 20 miles of shoreline at an elevation of 872.5 feet above sea level; (2) only one dam was necessary, which would cost $50,000 to construct; (3) a necessary bay excavation called "Garvey's Bay" could be accomplished at a cost of $10,000 to $14,000; and (4) water impounded by the dam would naturally reach Garvey's Bay. McIntyre and

Meier knew that such representations were false, since they had been involved in the project for three years and were familiar with the land and engineering for the project. McIntyre participated in lake level hearings in circuit court and both parties knew from a prior attempt to sell the project that additional dams and dikes would be required. The false representations were made with the intention of inducing action by defendants and defendants relied on the misrepresentations. Damages resulted.

"The general rule is that to constitute actionable fraud it must appear: (1) [t]hat defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery."

*Hi-Way Motor Co v International Harvester Co,* 398 Mich 330, 336; 247 NW2d 813 (1976), *Candler v Heigho,* 208 Mich 115, 121; 175 NW 141 (1919). See also *A & A Asphalt Paving Co v Pontiac Speedway, Inc,* 363 Mich 634, 639; 110 NW2d 601 (1961), *Marshall v Ullmann,* 335 Mich 66, 73-74; 55 NW2d 731 (1952), *Waldbauer v Hoosier Casualty Co,* 285 Mich 405, 408-409; 280 NW 807 (1938).

The plaintiffs' first position is that the actions of Meier and McIntyre were not consistent with the actions of a party seeking to defraud another and point out that Meier offered $72,000 to redeem the land contract and McIntyre offered to complete the

dam for $50,000 and to excavate Garvey Bay for $17,000.

The representations that were made and their falsity were fact questions. The trial judge found that: Meier and McIntyre were "[t]he agents of Cole Lakes, desperate to salvage their investment which would be lost in 24 hours if they did not sell the project, [who] deliberately misled the defendants about the true cost of the lake in order to sell the project. * * * [I]n these circumstances, we are satisfied that McIntyre and Meier, on behalf of plaintiffs, made material misrepresentations, which were false and known to be false, in order to induce the defendants to buy this land. Defendants Benton, Beltz and Linder did buy the land and they would not have done so if the false representations had not been made. Defendants Cottrill and Brownell also heard the false representations and relied on them when they agreed to buy out and take over the obligations of the original purchasers. All defendants suffered some financial injury as a result."

In this case credibility was an important factor. Credibility is for the trier of the fact. Appellate courts, in reviewing controverted issues of fact in a nonjury law case do not consider the case *de novo* as in equity and will not reverse the judgment of the trial court unless the judgment is against the clear preponderance of the evidence. *Baith v Knapp-Stiles, Inc,* 380 Mich 119; 156 NW2d 575 (1968).

The trial court complied with GCR 1963, 517 and the decision was supported by sustantial evidence and there was no error.

Plaintiffs next argue that the representations of McIntyre and Meier pertained to future conditions and cite several Michigan cases which hold that

promises of future action, promises that future events will occur, statements of expected profits, value and opinion will not support an action of fraud.

In this case some of the representations were concerning topography of the land. McIntyre and Meier represented that a lake with a shoreline of 18 to 20 miles would be formed by the erection of a single dam costing $50,000. McIntyre had been familiar with the property all his life. Both Meier and McIntyre had worked on the project for three years. They well knew that the topography would not create such a lake without a series of dams for which there were no permits and which would cost more than $50,000. Representations concerning drainage, topography and features concerning land can be actionable if false. *LeRoy Construction Co v McCann,* 356 Mich 305; 96 NW2d 757 (1959), *Haener v McKenzie,* 188 Mich 27; 154 NW 59 (1915), *Jackson v Armstrong,* 50 Mich 65; 14 NW 702 (1883).

The record supports the trial judge's finding that the representations were concerning existing conditions and his conclusion was not erroneous.

The plaintiffs also raise the defense that defendants had a duty to make their own examination of the facts rather than relying on the representations of McIntyre and Meier. In making such argument plaintiffs rely on *Sutton v Benjamin,* 231 Mich 153; 203 NW 667 (1925), and *Achenbach v Mears,* 272 Mich 74; 261 NW 251 (1935).

*Sutton* states the law that representations of value are usually regarded as matters of opinion *unless* (a) the purchaser has had no opportunity to examine the property or (b) the seller has peculiar knowledge of the uses of the property which the purchaser does not have. *Achenbach* is distin-

guished from this case in that in *Achenbach* the purchaser had ample opportunity to make an investigation.

The law as to such contention is set forth in *Smith v McDonald,* 139 Mich 225, 229; 102 NW 738 (1905):

"* * * This contention assumes that the defrauded party owes to the party who defrauded him a duty to use diligence to discover the fraud. There is no such obligation. One who perpetrates a fraud cannot complain because his victim continues to have a confidence which a more vigilant person would not have.

"The rule contended for by plaintiff, which requires the same diligence from all persons, has no application to cases of fraud. If it had, the very persons, viz., the credulous and unwary, who are the usual victims of fraud, would be at a disadvantage, and would often be denied redress."

The issue arose in another case, *Sautter v Ney,* 365 Mich 360, 364; 112 NW2d 509 (1961), and the Court stated:

"* * * Starting with the leading and steadily cited case of *Eaton v Winnie,* 20 Mich 156 (4 Am Rep 377), and continuing through *Matteson v Weaver,* 229 Mich 495, 499, the rule is settled that (quotation from *Eaton,* p 166):

" 'Where one assumes to have knowledge upon a subject of which another may well be ignorant, and knowingly makes false statements regarding it upon which the other relies, to his injury, we do not think it lies with him to say that the party who took his word and relied upon it as that of an honest and truthful man, was guilty of negligence in so doing, as to be precluded from recovering compensation for the injury which was inflicted upon him under cover of the falsehood. If a party's own wrongful act has brought another into peril, he is not at liberty to impute the consequences of his acts to a want of vigilance in the injured

party, when his own conduct and untruthful assertions have deprived the other of that quality and produced a false sense of security.' "

In this case the rule requiring independent examination by the purchaser could not apply where negotiations were rushed by the requirement to sell the property before the redemption period expired on September 5, 1970, and when the misrepresentation concerned matters which would not be revealed through visual examination of the property and were made by McIntyre and Meier who had superior knowledge.

*Defendants should be barred from relying on fraud as a defense to a contract action because they acquiesced in the fraud and are unable to return plaintiff to the status quo.*

Defendants Brownell and Cottrill did have the property for a long time and the law requires that one defending on the grounds of fraud should rescind promptly.

As pointed out in *Dorgan v Birney,* 272 Mich 145, 151; 261 NW 278 (1935):

" 'This court has many times held that one seeking relief for fraud must act promptly after its discovery. *Draft v Hesselsweet,* 194 Mich 604; *Bowen v Stocklin,* 215 Mich 341. The mere lapse of time, however, is not sufficient to constitute laches. *Backus v Backus,* 207 Mich 690; *Walker v Schultz,* 175 Mich 280; *Humiston, Keeling & Co v Yore,* 181 Mich 629. The delay in moving may always be explained, and, if satisfactorily accounted for, relief will be granted, notwithstanding the lapse of time. *Mulheron v Henry S Koppin Co,* 221 Mich 187;' *Bayley v Friedberg,* 226 Mich 125.

" 'The law does not require action to rescind before the defrauded person is reasonably certain that he has been defrauded. If he acts with reasonable promptness thereafter, it is sufficient. The law of laches should be

used as a shield and not a sword.' *Barron v Myers,* 146 Mich 510, 514.

"See, also, *Zadel v Simon,* 221 Mich 180, *Sweet v Martin,* 233 Mich 655."

*Dorgan* further stands for the proposition that whether a recission was within a reasonable time is a fact question to be decided by a jury (or the trier of the fact) in view of all the facts and circumstances.

Fraud is a defense in either a legal or equitable proceeding. *Kahoun v Metropolitan Life Ins Co,* 37 Mich App 511; 195 NW2d 1 (1972), 37 Am Jur 2d, Fraud and Deceit, § 340, p 455.

It is true that one seeking to rescind on the grounds of fraud must put the other party in status quo but only insofar as it is possible to do so. *Mesh v Citrin,* 299 Mich 527, 538; 300 NW 870 (1941), *Dorgan, supra.*

Under the circumstances here existent the property had been lost by foreclosure and it was not possible for the defendants to return it to plaintiffs. In such case the court will still grant cancellation even though the consideration could not be returned "where the clearest and strongest equity imperatively demands it". *McIntosh v Fixel,* 297 Mich 331, 345; 297 NW 512 (1941).

*Defendants Linder, Benton and Beltz were unjustly enriched at the expense of plaintiffs.*

Plaintiffs seek equitable enforcement of the September 5, 1970, agreement.

The trial court found that plaintiffs (1) accepted a novation and (2) their agents and predecessors in title were guilty of fraudulent inducement.

Plaintiffs are barred from relying on the doctrine of unjust enrichment because of the fraudulent inducement of their agents and predecessors.

A case recently decided by the Michigan Supreme Court, in which the facts have much similarity to the instant case, found that one who claims rights acquired by fraud simply will not be heard in court for one seeking the aid of equity must come with clean hands. *Stachnik v Winkel,* 394 Mich 375; 230 NW2d 529 (1975).

The judgment of the circuit court is affirmed.