GERVAIS *v.* ANNAPOLIS HOMES, INC.

1. FRAUD—MISREPRESENTATION.

Finding that defendant seller of houses had not misrepresented to plaintiff buyers that water and sewer systems were in and paid for or that defendant breached an affirmative duty to give notice of water and sewer benefit charges was not clearly erroneous even though in some cases no representations at all were made, some buyers were informed of the charges, and some were not informed of the charges and told that the systems were in and paid for where each buyer signed an agreement providing that water and sewer benefit charges were the responsibility of the purchaser and where the trial court found that the agreement, drafted by the defendant, was perfectly clear and unambiguous and within the comprehension of the plaintiff buyers.

2. CONTRACTS—REMEDIES—RESCISSION—MONEY DAMAGES.

Rescission and money damages are different in kind and in basic legal theory; rescission is an equitable remedy of grace.

3. FRAUD—MISREPRESENTATION—EXISTING FACT—PAST FACT.

Misrepresentations to be actionable must relate to an existing or a past fact, not to future possibilities.

4. FRAUD—MISREPRESENTATION.

Finding of fact that defendant seller of low-income houses had not misrepresented to plaintiff buyers that taxes would be assessed on the houses at 40% of the purchase price, or that

---

REFERENCE FOR POINTS IN HEADNOTES

[1–4] 37 Am Jur 2d, Fraud and Deceit § 41 *et seq.*

monthly payments, including taxes, would be a specified sum was not clearly erroneous, even though taxes were assessed on actual value where several plaintiffs had been informed by the taxing city's assessor that the defendant's estimates were reasonable and probably correct, the mortgage closing statement signed by all plaintiffs provided that taxes were estimated and subject to adjustment, the defendant's representations were based on the city assessor's opinion and the mortgage closing agreement was unmistakably clear.

Appeal from Wayne, Horace W. Gilmore, J.  Submitted Division 1 November 9, 1970, at Detroit. (Docket No. 6635.)  Decided January 18, 1971. Leave to appeal denied April 23, 1971.  384 Mich 834.

Complaint by Emile P. Gervais and others against Annapolis Homes, Inc., and others for damages by reason of fraud and misrepresentation in the sale of numerous houses in a development project.  Motion to dismiss denied, and plaintiffs ordered to file amended complaint with more specific allegations. Defendants appealed.  Affirmed, 377 Mich 674. Amended complaint by Gervais and others against Annapolis Homes, Inc., and others for damages by reason of fraud and misrepresentation.  Judgment for defendants.  Plaintiffs appeal.  Affirmed.

*Barris, Sott, Denn & Driker* (by *Mitchell Dechter*), for plaintiffs.

*Bodman, Longley, Bogle, Armstrong & Dahling* (by *Richard D. Rohr* and *Michael B. Lewiston*), for defendants.

Before: McGREGOR, P. J., and HOLBROOK and O'HARA,* JJ.

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

O'Hara, J.   This case, like Tennyson's brook, seems destined to go on forever.   It wended its way from its origin in the Wayne Circuit Court as a class action in 1964 to submission to the Supreme Court in 1965 and decision there in 1966.   See *Gervais* v. *Annapolis Homes, Inc.* (1966), 377 Mich 674.   In that case the precise issue was the propriety of the denial of defendant's motion to dismiss for misjoinder of parties.   The Supreme Court affirmed.   The effect of the decision was to permit proceeding on the merits in the court below.   By the time this could take place, a second class action was started including 86 additional plaintiffs.   There were 33 originally.   The cases were consolidated for trial.   The defendants are five corporate entities, all more or less progeny of Kaufman & Broad. Building Company.   They are totally-owned subsidiaries.   If all the parties litigant were ever assembled at one time, trial would probably have to be held in a stadium. The record is copious.   There are eight assignments of error.   The briefs are extensive and well prepared.

The issues reduced to the lowest common denominator are whether the findings of fact made by the trial judge sitting without a jury are supported by the record, and whether to those facts, if properly found, the trial court properly applied the controlling law.

Defendant[1] is the developer and seller of a project of some 400 residential homes in the City of Wayne. The city, as part of an urban-renewal project, largely federally funded, acquired these sites and installed all of the necessary site improvements, such as sewer and water lines and pavement of the streets and sidewalks.   The sites were thereafter sold to defend-

---

[1] We shall refer to the multiple corporate defendants in the singular.

ant for the development of a low-income housing project.

Procedures were established at pre-trial conference whereby these individual cases were to be tried in groups of 25 plaintiffs per trial. Plaintiffs on this appeal, now reduced to 23, constitute the first group whose cases have been tried.

They are purchasers of residential homes from defendant in the project hereinbefore described. Plaintiffs allege that defendant made two fraudulent misrepresentations to them on which they relied to their detriment.

Their first allegation relates to water and sewer benefit charges. The City of Wayne assesses a water and sewer benefit charge of $400 payable at the rate of $5 per quarter over 20 years on each home newly purchased in the city. Plaintiffs allege misrepresentation in that defendant affirmatively assured them that the water and sewer systems were "in and paid for". Alternatively, they allege an affirmative duty on defendant to give notice of the water and sewer benefit charges and failure of defendant to do so.

Before going further, some explanation of the benefit charge is in order. For some 30 years the city, formerly village, of Wayne has by ordinance assessed a $400 water and sewer benefit charge against all new purchasers of property. This assessment is credited to a general fund for improvements in the water and sewer system of the city. The assessment does not relate to any particular improvement and is not an "installation" or a "connection" charge relating to the property purchased. The quarterly billing of $5 is part of the water bill received by property owners, but is separately designated.

Plaintiffs' second claim of mirepresentation relates to the amount of taxes to be paid by purchaser. It is alleged that defendant represented that taxes would be assessed at the rate of 40% of purchase price. It is further alleged that at the time of these representations, defendant knew or had reason to know that taxes would be assessed at a percentage of actual value. Because the city, as part of its urban-renewal project, had sold these sites to defendant at substantially below actual value, the purchase price of these homes was measurably lower than actual value. As required by the law of this state, the taxes were assessed at a percentage of actual value.

This matter was tried to the court without a jury. The judge dictated extensive and specific findings of fact in relation to each of the 23 cases before him. "Findings of fact shall not be set aside unless clearly erroneous." GCR 1963, 517.1. Having reviewed the exhibits and the eleven hundred-plus pages of testimony, we conclude that these findings are not clearly erroneous and may not, therefore, be set aside.

We need not detail these findings in full; we summarize those we consider more important.

With reference to the water and sewer benefit charges, the findings vary in many of the cases. Some of the plaintiffs were not informed of the benefit charges, but were told that water and sewers were "in and paid for". In some cases, no representations on the subject were made. Other plaintiffs were informed of the benefit charges and were not told that the water and sewer were "in and paid for". The court found that each plaintiff signed a purchase agreement, drafted by defendant, which provided in part:

"All taxes and assessments which have become a lien upon the land prior to the date of closing shall be paid by the seller, excepting current taxes which shall be prorated and adjusted as of the date of closing and *excepting water and sewer benefit charges which shall be the responsibility of the purchaser.*" (Emphasis supplied.)

The court further found, as a matter of fact, that this part of the purchase agreement was perfectly clear and unambiguous and within the comprehension of plaintiffs.

The court made the following finding of facts relating to the question of assessment for tax purposes:

1) Prior to the sale of homes to the plaintiffs, defendant had constructed two model homes. These homes were assessed at a rate of 43% of the appraised value of the land.

2) Mr. Zisette, defendant's representative, objected to any assessment in excess of 40% of the purchase price, and had several meetings with representatives of the City of Wayne on this question. The city representatives discussed with Mr. Zisette the procedures laid out in the Michigan State Tax Commission Manual and promised to get back to Mr. Zisette on the question of assessment.

3) The court found there was no testimony on the record as to when or whether the subject of assessments and taxes on the two model homes was determined to be closed by the city, or when representatives of defendant were advised of such a determination.

Plaintiffs contended that defendant's misrepresentation as to taxes took two forms: (1) a representation that taxes would be computed on the basis of 40% of purchase price, and (2) that monthly payments on the property, including taxes, would

be a specific sum stated. The court found factually that several plaintiffs sought verification through the city assessor's office of the tax information given them by defendant's agents. In every case the city assessor's office agreed that the estimates of defendant's agents were reasonable and probably correct. Treating each case individually, the court found that most or all of the plaintiffs had been given estimates by defendant's agents in one of the two forms mentioned. The court further found that all of the plaintiffs understood that taxes were estimated and subject to adjustment and that monthly payments might go up in reflection of various adjustments in assessment and tax rate.

The mortgage closing statement signed by all plaintiffs provided in pertinent part, "taxes are estimated and subject to adjustment".

On these findings of fact, the court found no cause of action on both counts as to all plaintiffs.

As to the water and sewer benefit charges, the court held that, aside from the fact that the record was spotty as to representations of any kind, the misrepresentations, if any, were not material. He first noted that all of the purchasers without exception stated their willingness to pay a dollar or two more in monthly payments because of the low price of these homes. The increase due to the water and sewer benefit charges amount to about $1.66 per month. We take this to mean that the trial judge determined that the essential element of reliance in the claimed misrepresentation was absent. Additionally, he concluded as a matter of law that before a misrepresentation is material enough to justify damages, it must be sufficient to afford a basis for rescission of the contract.

We cannot agree with this statement of law, and if it were controlling decisionally we would per-

force reverse. Rescission and money damages are different in kind and in basic legal theory. As the Supreme Court pointed out in *Browne* v. *Briggs Commercial & Development Co.* (1935), 271 Mich 191, 194, "the equitable remedy of rescission is one of grace". In that case the court ordered compensation in the nature of abatement of part of the purchase price because it found that to be a more appropriate remedy. We do not conceive the right to money damages based upon material misrepresentation to be dependent upon the same test as would move a court to grant rescission.

The trial court here did, however, find and hold additionally that as to the claim of fraud relating to the sewer and water benefit charges, the express language of the purchase agreement prevented recovery. He cited in support thereof *Wilder* v. *Detroit Edison Co.* (1957), 349 Mich 154. In his inimitable legal prose, Justice VOELKER writing for a unanimous court discussed when and under what circumstances this rule properly applies at p 160:

"Judges love rules and are frequently baffled when they cannot invoke them. If we will not venture to state a rule, then, we can at least pose a few of the factors we deem of some possible utility when we are confronted with these perplexing situations. Is this thing really likely to have happened this way? What kind of an operator is he who procured the writing? What was in it for him? How does this situation stack up with the common experience of mankind? Is this truly a case of the fox and the shorn lamb? Have the parties in apparent good faith substantially altered their positions in reliance upon the writing? What are the 'overtones' of the case or record before us? These are only some of the considerations involved. We hasten to add that we are not urging that every judge become his own jury or private lie-detecting

machine. But judges happily do not come entirely naked and unworldly to their black robes. We trust also that in the transition they are not expected to discard whatever fund of common sense they may have possessed."

Judge Gilmore heard the witnesses, observed them, assessed their level of comprehension. We may not have made the same findings of fact and evaluation of the whole situation as did the trial court. But it is impermissible that we substitute our judgment for his when there is proof and proper inferences from proofs to sustain his findings. Again, in the language of *Wilder, supra,* p 161:

"Translated into an acceptable legal conclusion we think this means that we must agree with the circuit judge that the plaintiffs have failed to sustain the burden of proof as to fraud."

As to the claimed fraudulent misrepresentations as to taxes, the court's denial was based on several grounds. First, he held that the representations initially made as to the amount of the taxes were based upon defendant's information gleaned from the assessing office. We agree with plaintiffs that this standing alone would not excuse the defendant. Additionally, however, the court relied on the well settled rule that misrepresentations to be actionable must relate to an existing or a past fact and not to future possibilities. *Roy Annett, Inc.,* v. *Kerezsy* (1953), 336 Mich 169. Moreover, he again pointed out that the closing instrument very clearly and unequivocally stated that taxes were estimated and subject to adjustment. This undisputed fact brings again into operation the rule of the merger of claimed misrepresentations into a written instrument.

Able counsel for plaintiffs argued with great vigor that this was in effect a fine-point fire escape by which defendants could avoid their legal responsibility. He dramatized his argument by displaying a properly authenticated and evidentiarily-admitted copy of the document.

Again, we think we must, under the *Wilder* rule, look to the whole situation. We cannot ignore the trial judge's pointed fact-finding: that despite the varying degrees of sophistication and education of the plaintiffs, the express language was so unmistakably clear as to bind the plaintiffs by it.

From a careful review of the voluminous record, we are constrained to affirm the trial judge's conclusion that plaintiffs fail to sustain their burden of proof of material fraudulent misrepresentation that would support money damages.

We note that the trial judge, for reasons which must have been sufficient to move him, assessed no costs. We think it was probably that as a class action it would be difficult to prorate them, and that perhaps individual injustices might result.

Under the particular circumstances of this case, we likewise assess no costs. The judgment of no cause of action is affirmed.

All concurred.