DEHRING v NORTHERN MICHIGAN EXPLORATION COMPANY, INC

Docket No. 50111. Submitted December 11, 1980, at Lansing.—Decided March 4, 1981.

Plaintiffs, Alfred Dehring, Celia M. Smigelski, Harry Dehring, Raymond Dehring and Virginia Veto, own a parcel of land in Presque Isle County, Michigan, as tenants in common. Celia Smigelski, Raymond Dehring and Virginia Veto executed a lease granting Northern Michigan Exploration Company, Inc., the right to explore for and produce oil and gas on the property. Harry Dehring later signed the lease, but Alfred Dehring refused to sign it. Plaintiffs brought an action against Northern Michigan Exploration in Presque Isle Circuit Court to rescind the lease. At trial, plaintiffs alleged that the signatures were procured by certain false representations made by defendant's agent, Joe Cozart. Plaintiffs claimed that Cozart told Celia Smigelski, Raymond Dehring, and Virginia Veto that he had been sent with the lease by their brother Alfred, that without the addition of Alfred's signature the lease would be void, and that the money paid for the lease was the most that could be obtained anywhere. Smigelski, Veto, and Raymond Dehring all stated that they relied on and were influenced by Cozart's representations. Alfred Dehring testified, however, that he did not send Cozart to contact his siblings. Mr. Cozart testified, under the adverse witness statute, that he attempted to contact

REFERENCES FOR POINTS IN HEADNOTES
[1, 6, 7] 5 Am Jur 2d, Appeal and Error §§ 703, 822.
[2] 5 Am Jur 2d, Appeal and Error § 841.
[3] 17 Am Jur 2d, Contracts § 185.
[4] 17 Am Jur 2d, Contracts §§ 516-519.
[5] 22 Am Jur 2d, Damages § 195.
  Mental anguish as element of damages in action for breach of contract to furnish goods. 88 ALR2d 1367.
[7] 5 Am Jur 2d, Appeal and Error § 831.
[8] 5 Am Jur 2d, Appeal and Error § 884.
[9] 5 Am Jur 2d, Appeal and Error § 774.
[10] 4 Am Jur 2d, Appeal and Error §§ 491, 492.
[11] 81 Am Jur 2d, Witnesses § 74.

Alfred Dehring after a check of county records revealed Mr. Dehring to be an heir to the property. Cozart claimed that Dehring's phone was answered by a woman who identified herself as Dehring's niece. She allegedly informed him that Dehring had a hearing problem and that Cozart should contact Mrs. Smigelski. Although Cozart conceded that he might have mentioned Alfred when he talked to the other siblings, he said he could not recall if he was asked if he had talked to Alfred but that, if he had been asked such a question, he would have answered in the negative. Cozart stated that he distinctly recalled telling Smigelski, Veto, and Raymond Dehring that he had no idea what prices other companies were paying for leases. Cozart also stated that while he had no recollection of being asked about the validity of the lease if signed by only a majority of the tenants in common, if he had been asked he would have answered honestly.

At the conclusion of plaintiffs' proofs, defendant's motion for a directed verdict was granted, Joseph P. Swallow, J. With regard to Alfred Dehring, the court ruled that, since no lease had been entered into by him, there was nothing to rescind. The motion was granted with regard to plaintiff Harry Dehring, since he had not testified and no other witness was able to establish that he had signed the lease based on the same representations. The motion was granted dismissing the claims of the other plaintiffs for failure to prove an injury, which the court ruled was a necessary element of fraud. Plaintiffs appeal.
*Held:*

1. Plaintiffs challenged the court's holding that the injury required to be established was not proven. Rescission and money damages are different in kind and in basic legal theory. The type of injury which would permit rescission should not necessarily be measured by pecuniary values but should be available, the other elements of fraud being established, where the party seeking to rescind has suffered some legal injury which cannot be measured in monetary terms. The lower court required proof that higher prices might have been offered by other potential lessees. The true issue is not whether plaintiffs might have secured a higher price but whether they were induced to sign the lease with defendant before they could even investigate other lessees because defendant's agent represented that the lease was approved by Alfred Dehring and would not be enforceable unless and until Alfred Dehring signed it. Each statement or representation 1) was alleged to have been made by defendant's agent, 2) was allegedly false, 3) was allegedly known to be false when made, 4) was apparently made with the

intention of inducing plaintiffs to execute the lease, 5) did induce the execution of the lease, and 6) caused injury to the plaintiffs. The materiality of the representations is reflected in testimony that the plaintiffs would not have executed the lease if they had known that Alfred Dehring did not approve of it and that his approval or disapproval was irrelevant once a majority of them signed. If the witnesses who testified on plaintiffs' behalf were credible, their testimony established the necessary elements of fraud.

2. The trial court properly dismissed the claims of Harry and Alfred Dehring.

3. A plaintiff who seeks rescission may also recover damages for losses sustained as a direct result of the misrepresentation. However, a plaintiff may not recover for emotional distress amounting to injured feelings unaccompanied by any physical injury.

4. The allowance of leading questions is discretionary with the trial court and will not be overturned on appeal absent an abuse of discretion. To find an abuse of discretion by a trial court requires the reviewing court to find that the result is so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment, but defiance thereof, not the exercise of reason but rather of passion or bias. There was no abuse of discretion in refusing to allow plaintiffs' attorney to ask Alfred Dehring leading questions.

5. The record on appeal must be reviewed as a whole to determine whether a party was denied a fair and impartial trial. Based on the whole record, plaintiffs were not denied a fair trial.

Reversed and remanded with instructions. The Court of Appeals retained jurisdiction.

1. APPEAL — EQUITY — DE NOVO REVIEW.

The findings of a court of equity are reviewed *de novo* by the Court of Appeals, with due deference being given to the findings of the trial court.

2. APPEAL — FINDINGS OF FACT.

The Court of Appeals is required to sustain on appeal the findings of a trial court unless the Court of Appeals becomes convinced, upon review of the evidence, that had it heard the evidence in the first instance it would have been compelled to rule contrary to the ruling actually made by the trial court.

3. Contracts — Remedies — Rescission — Parties.

A trial court properly dismissed a party who was a tenant in common of real property subject to an oil and gas lease from a suit to rescind the lease for fraud in the inducement where the party did not sign the lease or otherwise act to his detriment in reliance upon any false statement of the defendant.

4. Contracts — Remedies — Rescission — Damages.

Rescission and money damages are different in kind and in basic theory; the type of injury which would permit rescission should not necessarily be measured by pecuniary values, but should be available where, the other elements of fraud being established, the party seeking to rescind has suffered some legal injury which cannot be measured in monetary terms.

5. Contracts — Remedies — Rescission — Damages — Emotional Distress.

A plaintiff who seeks rescission may also recover damages for losses sustained as a direct result of the misrepresentation; however, a plaintiff may not recover for emotional distress amounting to injured feelings unaccompanied by any physical injury.

6. Judges — Findings of Fact — Court Rules.

The rule requiring a trial court sitting as the trier of fact to make findings of fact and conclusions of law contemplates that level of specificity that will disclose to the reviewing court the controlling choices made as between competing factual assertions (GCR 1963, 517.1).

7. Appeal — Equity — Findings of Fact.

*De novo* review of bench trials in equity cases encompasses appellate power to make independent findings of fact and conclusions of law based on the record where the trial court failed to make findings with the requisite specificity except where the credibility of witnesses is crucial.

8. Appeal — Leading Questions.

The admission of leading questions is discretionary with the trial court and will not be overturned on appeal absent an abuse of discretion.

9. Appeal — Abuse of Discretion.

To find an abuse of discretion by a trial court requires the reviewing court to find that the result is so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of

judgment but defiance thereof, not the exercise of reason but rather of passion or bias.

10. APPEAL — FAIR TRIAL.

The record on appeal must be reviewed as a whole to determine whether a party was denied a fair and impartial trial.

11. TRIAL — WITNESS LISTS — COURT RULES.

A trial court's decision to allow a witness, who was not listed on the witness list prior to trial, to testify at trial is largely a matter of discretion (GCR 1963, 301.10).

*Larry R. Farmer,* for plaintiffs.

*Elmer L. Radka,* for defendant.

Before: BRONSON, P.J., and J. H. GILLIS and C. L. BOSMAN,* JJ.

J. H. GILLIS, J. Plaintiffs sued to rescind an oil and gas lease. After plaintiffs put in their proofs, the trial court, sitting without a jury, granted defendant's motion for a directed verdict.[1] Plaintiffs appeal as of right.

Plaintiffs own as tenants in common a 120-acre parcel of land in Belknap Township, Presque Isle County, Michigan. The land was deeded to plaintiffs by their mother on May 2, 1977. The life estate she retained ended at her death on May 9, 1977. On July 19, 1977, plaintiffs Celia Smigelski, Raymond Dehring, and Virginia Veto signed a 5-year lease granting defendant the right to explore for and produce oil and gas on the land. The lease provided plaintiffs with a small yearly rent and an

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Although defendant moved for a directed verdict, the case was tried without a jury and the correct motion would have been one for dismissal. GCR 1963, 504.2. Nevertheless, plaintiffs were not prejudiced by this mistake given that the trial court viewed the evidence in a light most favorable to the plaintiffs, which he need not have done. *Warren v June's Mobile Home Village & Sales, Inc,* 66 Mich App 386, 389-390; 239 NW2d 380 (1976).

execution bonus of $3,000. Shortly thereafter, the lease was also signed by plaintiff Harry Dehring. Alfred Dehring subsequently refused to sign the lease.

At trial, plaintiffs alleged that their signatures were induced by certain false representations of defendant's agent, Joe Cozart. Plaintiffs claim that Cozart told Celia Smigelski, Raymond Dehring, and Virginia Veto that he had been sent with the lease by their brother Alfred, that without the addition of Alfred's signature the lease would be void, and that the money paid for the lease was the most that could be obtained anywhere. Smigelski, Veto, and Raymond Dehring all stated that they relied on and were influenced by Cozart's representations. Alfred Dehring testified, however, that he did not send Cozart to contact his siblings.

Mr. Cozart testified, under the adverse witness statute, that he attempted to contact Alfred Dehring after a check of county records revealed Mr. Dehring to be an heir of Martha Dehring. Cozart claimed the Dehring's phone was answered by a woman who identified herself as Dehring's niece. She allegedly informed him that Dehring had a hearing problem and that Cozart should contact Mrs. Smigelski. Although Cozart conceded that he might have mentioned Alfred when he talked to the other siblings, he said he could not recall if he was asked if he had talked to Alfred but that, if he had been asked such a question, he would have answered in the negative. Cozart stated that he distinctly recalled telling Smigelski, Veto, and Raymond Dehring that he had no idea what prices other companies were paying for leases. Cozart also stated that, while he had no recollection of being asked about the validity of the lease if signed by only a majority of the tenants in com-

mon, if he had been asked he would have answered honestly.[2]

At the conclusion of plaintiffs' proofs, defendant's motion for a directed verdict was granted. With regard to Alfred Dehring, the court ruled that, since no lease had been entered into by him, there was nothing to rescind. The motion was granted with regard to plaintiff Harry Dehring, since he had not testified and no other witness was able to establish that he had signed the lease based on the same representations. The motion was granted dismissing the claims of the other plaintiffs for failure to prove an injury, which the court ruled was a necessary element of fraud.

## I

Plaintiffs raise three major claims of error on appeal. The first challenges the trial court's finding that, although proof of injury was required to be established to support plaintiffs' cause of action, it was not proved.

Plaintiffs' claim involves the equitable remedy of rescission. This Court must therefore review the trial court's findings *de novo,* although due deference will be given to the trial court's conclusions. Unless convinced, on review of the evidence, that we would have reached a contrary result, we must sustain the findings of the trial court. *Emerson v Arnold (After Remand),* 92 Mich App 345, 357-358; 285 NW2d 45 (1979).

Preliminarily, we note our affirmance of the trial court's dismissal of the claims of Harry and Alfred Dehring. Harry Dehring did not appear as a witness, and, apparently, no other plaintiff had

---

[2] As a matter of law, the majority of tenants in common may develop land for oil and gas mining purposes. MCL 319.101 *et seq.;* MSA 13.140(1) *et seq.*

knowledge of the circumstances surrounding his execution of the lease. While Alfred Dehring testified, he did not sign the lease or otherwise act to his detriment in reliance on any of defendant's (or its agent's) statements.

The trial court dismissed the case as to the other plaintiffs because of their failure to establish an injury. This was error.

Plaintiffs' claim for rescission was supported by plaintiffs' assertion that the execution of the lease had been induced by fraud. Defendant thus argues that, as was recognized in Cole Lakes, Inc v Linder, 99 Mich App 496, 503; 297 NW2d 918 (1980):

"The general rule is that to constitute actionable fraud it must appear: (1) [t]hat defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery."

Regardless of the existence of proofs in support of the other elements, defendant argued and the trial court found that, as an injury was not established, plaintiffs' claim must fail. The trial court stated in pertinent part as follows after noting the six-point definition of actionable fraud quoted above:

"Conceding, for the purpose of this motion, the evidence viewed in plaintiffs' best light, and that is the procedure at this point, and conceding the first five points to plaintiff, the material question still remains: namely, has the evidence established that plaintiffs

have suffered injury strictly limited to Item No. 6, as contained within the law, as agreed upon as between both plaintiff and defendant?

"First, as to the claim of injury by mental anguish or emotional distress, the Court cites the collection of several cases as contained in 61 ALR3d, as recorded at Page 922. For support, that under the circumstances of this case, namely, rescission of an oil and gas lease, that absent a showing of an independent physical injury that mental anguish or emotional distress are improper bases for establishing injury.

"Secondly, plaintiffs' unsupported claim that they have been deprived of their ability to negotiate is entirely too speculative to establish the necessary proof that they have suffered injury. Such claim if supported by a witness to the effect that he was desirous of negotiating with the plaintiff and that such negotiations might have provided a higher price per acre than had been paid to the plaintiffs might have prevailed. But that issue is not before me as plaintiffs have produced no witness to that effect, and that claim would be unsupported upon the record of this case.

"Plaintiff is, therefore, left with the single issue of do the proofs support a monetary injury: namely, has their reliance upon the misrepresentation or fraud resulted in their monetary injury? The estimation of what price they wanted or would like to have had, or thought it might have been worth, is insufficient for this purpose.

"Plaintiffs must thus rely upon defendant agent Cozart's testimony for this purpose since that is the only testimony on the record which could support the necessary claim under the agreed-upon law. That witness has testified that oil and gas leases in Belknap Township have ranged between $20 to $50 an acre, the latter figure of $50 being in excess of the price allowed to plaintiffs in this case. But this witness has also submitted unrefuted testimony that as between adjoining or contiguous acres the value may vary as between $100 and $25, and that he did not know or was unaware of the value of plaintiffs' lease rights.

"Based upon this record, it would be pure speculation for this court to say that defendant's price was less

than the fair market value of plaintiffs' lease rights or that plaintiffs have been injured as a result of defendant's claimed misrepresentation. Defendant's motion for directed verdict be and hereby is granted. An order to that effect shall be submitted."

The foregoing definition of actionable fraud is not qualified as to whether such fraud refers to the law action traditionally labeled "deceit", or the equitable action labeled "rescission". There is a very real difference between the two, however, particularly as to the damage or injury requirement:

"Where the plaintiff asserts the damages remedy for fraud, the rule is clear that he may not recover unless actual damage is shown; in other words, as is common in torts claims case [sic] rather than trespass, nominal damages cannot be recovered for fraud. A number of decisions have carried this idea over to the equity suit for rescission, and have held that the plaintiff who seeks rescission is limited by the same rule, and relief is not to be granted to him unless he can show 'damage' or 'injury.' * * *

"The rule sounds reasonable enough in the abstract. But if the plaintiff is told he is buying an apple orchard for his money, it is not beyond argument that he should be permitted relief if he gets a dairy farm instead, even if the dairy farm and the apple orchard have the same market value. If the rule requiring damages as a prerequisite to rescission were applied to this kind of situation, it would probably lead to quite unsatisfactory results.

* * *

"[S]ome courts apparently would reject the requirement of damages altogether, while still others purport to retain the rule but define 'damage' or 'injury' so broadly and vaguely that rescission can be achieved even in the absence of recognizable pecuniary harm.

"There are strong arguments against any requirement of pecuniary damages as a prerequisite to rescis-

sion, and little to be said in favor of the requirement. In the first place, the rule was probably introduced into rescission cases by historical accident or analytical failure, courts carrying it over from the damages action at law without realizing that the suit for rescission might have an entirely different foundation. It can be argued that the rule serves as some guarantee that the representation in question was material and some protection against rescission for trivial matters. That, of course, is possible. But no special rule, much less this one, is needed to deny relief where the defendant makes a representation not material or not in fact relied upon, and the law would probably be a good deal plainer and more just if, when materiality is in issue, courts would discuss that matter instead of the supposed requirement of damages." (Footnotes omitted.) Dobbs, Remedies (1973), pp 635-636.

See, also, 2 Restatement Contracts, § 476, comment c, p 910.

In Michigan, the distinction between rescission and money damages has been generally noted in several cases. An illustration of this distinction is contained in *Lenawee County Board of Health v Messerly,* 98 Mich App 478, 487; 295 NW2d 903 (1980), quoting *Harris v Axline,* 323 Mich 585, 589; 36 NW2d 154 (1949), for the proposition that "[a] mutual mistake as to the subject matter of a contract is ground for rescission of the contract, unless the injured party can be adequately compensated for the mistake". Although the basis for the rescission is different, the concept that rescission and money damages are opposing remedies in the same. "Rescission and money damages are different in kind and in basic legal theory. * * * We do not conceive the right to money damages based upon material misrepresentation to be dependent upon the same test as would move a court to grant rescission." *Gervais v Annapolis Homes, Inc,* 29 Mich App 378, 385; 185 NW2d 422 (1971),

*lv den* 384 Mich 834 (1971). See, also, *Westman v Brumm,* 248 Mich 387, 389; 227 NW 764 (1929).

The type of injury which would permit rescission should not necessarily be measured by pecuniary values. Rather, rescission should be available where, the other elements of fraud being established, the party seeking to rescind has suffered some legal injury which cannot be measured in monetary terms. Thus, where a misrepresentation induced two elderly plaintiffs to enter into a lease of oil and gas rights under which they received certain royalties, the California Supreme Court ruled as follows on the question of injury:

> "Since the action is one for equitable relief rather than for damages at law, it is sufficient for the plaintiffs to allege that they have been wrongfully deprived of certain property by the misrepresentation and they need not set forth in detail the extent to which they have been damaged. (See cases cited in 12 Cal Jur 813, 814)." *Seeger v Odell,* 18 Cal 2d 409, 417; 115 P2d 977; 136 ALR 1291 (1941).

In *Seeger, supra,* plaintiffs intended to enter into the lease, but this intent was fraudulently induced. Further, they received a benefit in the form of royalties, and there was no allegation that their desire to rescind was premised on the belief that they could have secured higher royalties with another lessee. Thus, the only discernable harm or injury with regard to the lease was that they were induced to enter into it on the basis of false statements, and, if they had known the truth, they likely would not have leased the oil and gas rights to the defendants.[3]

---

[3] *Seeger v Odell,* 18 Cal 2d 409; 115 P2d 977, 982; 136 ALR 1291 (1941), resulted in the California Supreme Court's reversal of the trial court's judgment on the pleadings in favor of some of the defendants. Thereafter, trial was held, but the lower court found against plaintiffs

The factual setting in *Seeger* is similar to that in the instant case. Here, plaintiffs were allegedly induced to enter into the lease with defendant on the basis that (1) their brother had approved the fact of the lease and the price, and (2) the price was the best they could get. Plaintiffs were also told that their signatures meant nothing without the signatures of all the brothers and sisters who held as tenants in common. If these statements were made with knowledge of their falsity and with the intent to induce reliance and if they were relied upon, then it would be inequitable to deny rescission of the lease. Certainly, the testimony was clear that none of the plaintiffs who signed the lease would have done so if they had known that Alfred Dehring had refused to do so or if they had known that higher cash bonuses were being paid by other lessees in Belknap Township, Presque Isle County. Furthermore, given the signatories' relationship with Alfred Dehring and his avowed responsibility for and familiarity with the land, it is unlikely that a majority of the tenants in common would have signed if they had known that, by statute, their signatures would create a binding lease despite Alfred Dehring's wishes.[4]

on the false representations on which their claim of fraud was based. The California Court of Appeals affirmed. *Seeger v Odell,* 64 Cal App 2d 397; 148 P2d 901, 904 (1944).

[4] We do not believe that plaintiffs should be charged with failure to investigate the validity of the representation made as to the binding nature of the lease absent the signatures of *all* the tenants in common:

"It is the general rule that 'fraud cannot be predicated upon misrepresentations as to matters of law.' 12 RCL 295. The writer, however, adds that the rule 'may be rendered inapplicable by the existence of peculiar facts and circumstances.' *Id.,* 296. The cases cited afford little help in determining the question here presented. The rule is founded on the maxim that 'All men are presumed to know the law.' Experience teaches us that this maxim finds but little support in fact. It may be doubted if it ever intended to excuse fraud. In *Longmeid v Holliday,* 6 Exch 761, 766, it was said:

" 'If any one knowingly tells a falsehood, with intent to induce

Having determined that pecuniary injury is not necessarily required to establish fraud as a basis for rescission, we must consider whether the plaintiffs otherwise established this element. The trial court found that the alleged loss of their freedom to negotiate with other potential lessees was too speculative to establish injury. The court apparently believed that to prove this factual basis for injury, plaintiff had to offer a witness who had tried to negotiate with plaintiffs, or had wanted to do so but could not because the defendants had already secured their lease and recorded it. While one of the plaintiffs testified that at least one other oil and gas company had been interested in a lease, the details of the negotiations were ruled inadmissible as hearsay. Thus, the trial court found a crucial lack of evidence as to other prices which might have been offered.

This portion of the trial court's findings illustrates a common area of confusion as to suits for rescission on the basis of fraud. As was stated in 37 Am Jur 2d, Fraud & Deceit, § 285, p 382:

"In some of the cases taking the view that pecuniary damage is necessary for rescission, it would seem that the misrepresentations in question were so collateral as to render the pecuniary damage rule unnecessary to the result reached. Moreover, in certain jurisdictions wherein general support has been given to the pecuniary damage rule, the rule has been made subject to exceptions of such a character as to suggest that in general the absence of pecuniary damage in a particular case is most properly treated as a mere factor in the general problem as to the materiality or substantial character of the acquirer's asserted ground of rescission." (Footnotes omitted.)

another to do an act which results in his loss, he is liable to that person in an action for deceit.' " *Rosenberg v Cyrowski,* 227 Mich 508, 513-514; 198 NW 905 (1924).

The import of the foregoing commentary is that, rather than determine whether a particular misrepresentation was material to a given plaintiff's actions, courts have erroneously used the extent of pecuniary injury as the measure of materiality. Thus, in the instant case, the lower court required proof that higher prices might have been offered by other potential lessees. To our view, the true issue is not whether plaintiffs might have secured a higher price but whether they were induced to sign the lease with defendant before they could even investigate other lessees because defendant's agent represented that the lease was approved by Alfred Dehring and would not be enforceable unless and until Alfred Dehring signed it. Each statement or representation (1) was alleged to have been made by defendant's agent, (2) was allegedly false, (3) was allegedly known to be false when made, (4) was apparently made with the intention of inducing plaintiffs to execute the lease, (5) did induce the execution of the lease, and (6) caused injury to the plaintiffs, as discussed above. The materiality of the representations is reflected in testimony that the plaintiffs would not have executed the lease if they had known that Alfred Dehring did not approve of it and that his approval or disapproval was irrelevant once a majority of them signed. See, 37 Am Jur 2d, Fraud & Deceit, § 180, p 243. Thus, we are persuaded that, if the witnesses who testified on plaintiffs' behalf were credible, their testimony established the necessary elements of fraud.

As to plaintiffs' damages, the law in Michigan is that, if the plaintiff "proceeds under a theory of rescission, he may also recover damages for losses sustained as the direct result of the misrepresentation". *Mock v Duke,* 20 Mich App 453, 455; 174

NW2d 161 (1969). Thus, to the extent that plaintiffs have established any consequential damages arising from the fraud, such may be awarded.

At trial, Celia Smigelski testified that she had taken an undefined number of sick days from work "because of hypertension, and it has a lot to do with this [case]". Further testimony on the question of emotional distress and mental anguish was precluded by the trial court's ruling that damages for mental anguish could not be recovered in a suit for rescission. Plaintiffs' complaint, however, states that:

"B. Plaintiffs have suffered embarrassment and humiliation amongst acquaintances, neighbors, associates, and others, at having been so blatantly duped and cheated by Defendant.

"C. Plaintiffs have suffered extreme worry, anxiety, and aggravation as a result of not knowing the true and lawful status of their rights and interests in said land, and their obligations and liabilities of said lease."

The trial court's ultimate ruling on the question of mental anguish was premised on Anno: *Recovery for mental anguish or emotional distress, absent independent physical injury, consequent upon breach of contract in connection with the sale of real property,* 61 ALR3d 922 (1973). The trial court stated that "* * * absent a showing of independent physical injury that mental anguish or emotional distress are improper bases for establishing injury" in a suit for rescission of an oil and gas lease.

As the title to the cited annotation reveals, the cases reviewed therein involved breach of a contract for sale of real property. Despite this dissimilarity from the case at bar, we find several principles noted in the annotation which are pertinent

here. For instance, in *Rogowicz v Taylor & Gray, Inc,* 498 SW2d 352; 61 ALR3d 916, 920 (Tex Civ App, 1973), the court of civil appeals of Texas stated that:

"As a general rule, mental suffering does not constitute an element of damages that may be recovered in an action either for a breach of contract or for a tort founded on a right growing out of a breach of contract. (Citations omitted.) The foregoing rule, however, is qualified to the extent in that in some instances a recovery can be had where it is shown that the mental perturbation was more than ordinary regret or annoyance but is of the type commonly denominated as mental anguish; provided, however, the mental anguish must be shown to have been such a necessary and natural result of the breach of warranty as would be held to have been within the contemplation of the defendant at the time the contract was made." (Citations omitted.)

Under such a rule, Mrs. Smigelski's embarrassment, humiliation, extreme worry, anxiety and aggravation would not be a proper basis for recovery of damages. See, also, *Harsche v Czyz,* 157 Neb 699, 710-711; 61 NW2d 265 (1953), where the Nebraska Supreme Court determined that, in an action at law for fraud, plaintiff could recover only for his actual loss and not for mental anguish and humiliation. In *Harsche,* defendant refused to fulfill her apparently insincere promise to marry plaintiff and plaintiff sued to recover money he had entrusted to defendant and spent on her in anticipation of their wedding. Certainly it would appear that the humiliation, worry and anxiety suffered by plaintiff in *Harsche* would be much more deserving of compensation in damages than the worry suffered by Mrs. Smigelski in the instant case.

There are no Michigan cases concerning recovery of damages for mental anguish in a suit for rescission. This case does not appear to be one in which such a rule should be formulated. Mrs. Smigelski may well have suffered worry, anxiety and humiliation due to the actions of defendant and its agents and the consequent uncertainty regarding the oil and gas rights in the land. However, nothing in the complaint or abbreviated testimony reveals "more than minimal worry and inconvenience over the consequences of" the executed and recorded lease. *Meyers v Basso,* 381 So 2d 843, 845 (La App, 1980). Certainly, her emotional distress is not such as to warrant the term "mental anguish". Rather, we are persuaded that the emotional distress suffered by Mrs. Smigelski is no more than that which must be felt by any litigant in a civil case, and we are unwilling to declare that such "injured feelings" are deserving of special damages.

The trial below was conducted by the judge sitting without a jury. GCR 1963, 517.1 requires the judge, as trier of fact, to make findings of fact and conclusions of law. "The rule contemplates that level of specificity that will disclose to the reviewing court the controlling choices made as between competing factual assertions." *Holbern v Holbern,* 91 Mich App 566, 569; 283 NW2d 800 (1979). In the instant case, the trial court made specific findings of fact as to the sixth element of fraud but resolved the other five by assuming *arguendo* that plaintiffs had fulfilled their burden of proof thereon. This was an error which complicates our review on appeal because the remainder of the elements may be proved or not depending on the credibility of the witnesses.

In the past, this Court has determined that *de*

*novo* review of bench trials in equity cases encompasses appellate power to "make our findings [of fact and conclusions of law] based upon the record before us" where the trial court failed to comply with the dictates of GCR 1963, 517.1. *Holbern, supra,* 569. Such determination does not appear to have been made, however, in cases where the credibility of the witnesses is critical to the outcome. Credibility of witnesses is necessarily a question for the trier of fact, *Greenleaf v Dep't of State Highways & Transportation,* 90 Mich App 277, 285; 282 NW2d 805 (1979), and so we must remand to the trial judge in order that he may make specific findings of fact on each of the first five elements of fraud.

## II

At trial, Alfred Dehring testified on behalf of plaintiffs. Mr. Dehring is hearing-impaired and plaintiffs assert on appeal that such handicap was a proper basis for the use of leading questions on direct examination. Such questions were not allowed by the trial court because Mr. Dehring's testimony was critical to the case.

MRE 611(c) provides that:

"Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony. Ordinarily leading questions should be permitted on cross-examination. When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions."

"The admission of leading questions is discretionary with the court." *People v Fields,* 49 Mich App

652, 658; 212 NW2d 612 (1973), MCL 768.24; MSA 28.1047. Thus, absent a clear abuse of discretion, the trial court's decision on the matter will not be overturned.

Mr. Dehring's testimony was crucial to the case, given that he was allegedly in charge of the Presque Isle County land, the person with whom defendant's agents were asserted to have made certain contacts and the person who was claimed to be the most familiar with current prices for oil and gas leases in the area. The trial court recognized this, and tried to strike a balance between the crucial nature of his testimony and his handicap, by stating as follows:

> "Just a minute. You have a decision here. We have a hearing problem with the witness. But, also, this is probably the most crucial testimony of the case. So while I might have discretion on testimony that's not so crucial, this case is hinging on his testimony. So I'd only suggest that counsel come closer, move your rostrum up, so he can hear you, and if the court reporter can hear, and rephrase your question. Because this is the most crucial area of testimony. Take some time with your questions, take whatever you need with the witness. But I'm going to—I'm not going to relax leading questions because of the crucial nature of his testimony.
>
> "Mr. Radka, if you want to come closer, Mr. Farmer, if you need to move any closer to the witness so he can hear your questions. Okay. Go ahead and proceed."

We cannot say that this determination was "so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias". *Spalding v Spalding,* 355 Mich 382, 384-385; 94 NW2d 810 (1959). Ac-

cordingly, we reject plaintiffs' contentions on this issue.

## III

Plaintiffs' final claim of error asserts that numerous trial court rulings denied them a fair trial.

We reject plaintiffs' claim of error as to the making of a separate record. A review of the transcript reveals that plaintiffs' attorney never requested that such a record be made. Therefore, the question cannot be considered on appeal. *People v Stinson,* 88 Mich App 672, 674; 278 NW2d 715 (1979).

Furthermore, after a review of the record as a whole, *Moldovan v Allis Chalmers Manufacturing Co,* 83 Mich App 373, 380; 268 NW2d 656 (1978), *lv den* 406 Mich 916 (1979), *cert den* 444 US 1034; 100 S Ct 707; 62 L Ed 2d 671 (1980), we do not find that any of the other challenged rulings operated to deny plaintiffs a fair trial. The court's decision to restrict Mr. Cozart's testimony as to the enforceability of a lease signed by a majority of the tenants in common was qualified by the statement that plaintiffs could recall Cozart if a proper foundation was laid by other witnesses. Although later witnesses testified to such representations, Cozart was not recalled. This failure cannot be charged to the trial court.

The court's ruling precluding questioning of defendant's agent John Hamel as to land values is likewise upheld. Although plaintiffs now argue that such testimony would have supplied proof of damages, Hamel's testimony at trial was sought "simply to see what [he] knew about the prices". Further, our conclusion that pecuniary injury was not necessarily relevant to plaintiffs' cause of ac-

tion obviates the necessity of further considering this claim.

The trial court properly sustained hearsay objections to Mrs. Smigelski's testimony. Any statement she might have made as to prices offered to her by other potential lessees would have been offered to prove the truth of the matter asserted. MRE 801(c), 802.

Plaintiffs were properly precluded from calling witnesses not disclosed to the defendant prior to trial as ordered by the court. Although this case was not heard in Wayne County, the trial court's pretrial order directing plaintiffs to disclose a list of their witnesses and a brief statement of the substance of their testimony is tantamount to the requirements of GCR 1963, 301.10. That court rule requires the disclosure of witnesses within a certain number of days before trial, and "[n]o witnesses may be called at the trial of the case unless listed in such exchange of witnesses, except by leave granted upon a showing of good cause". The "trial court's decision to allow an unlisted witness to be called is largely a matter of discretion". *Banks v Wittenberg,* 82 Mich App 274, 277; 266 NW2d 788 (1978), *lv den* 403 Mich 809 (1978). We find no abuse of discretion here.

Finally, we see no error in the trial court's comments to counsel. See, *e.g., Lindhout v Ingersoll,* 58 Mich App 446, 449-450; 228 NW2d 415 (1975), *Madalinski v Hill,* 277 Mich 219, 223; 269 NW 147 (1936).

Reversed and remanded for proceedings consistent with this opinion. We retain jurisdiction.